in this matter. The juvenile in this case was adjudicated delinquent for a serious offense. She was in possession of approximately 16 kilos of cocaine, which she attempted to bring to the U.S. At the time that she committed the offense, as is stated in the report, she did not know what she had or how much she had. And under U.S. v. Carranza, that was enough for her to be found delinquent, Your Honor. Counsel, has she completed her sentence? She has not, Your Honor. I believe she is at about six months right now of detention. So in your challenge is only as to the term, not actually to her location or services that she might be receiving. Is that correct? That's correct, Your Honor. There was mention in a lot of the documentation as to whether she should be close to her home, which is in Mexico, and obviously we don't have contracts there, and as to what services she needs. And it's my contention that based on the record before the Court, she was not in need of any services. As I pointed out in my reply brief, she, in fact, has not received any of the mental health counseling that she is allegedly being held in custody for. Is there anything that this Court can do about that? Is there? That's evidently not only out of our control. It was out of the district court's control, which made one recommendation, and the Bureau of Prisons evidently either couldn't accommodate her in Arizona or was unwilling to accommodate her in Arizona. That's correct, Your Honor. And we are not fighting her detention in Idaho as opposed to Arizona. Was there any obligation imposed on the judge to determine the availability of this Arizona facility? Your Honor, I don't believe that that would be required because, as the Court is aware, there are only so many facilities that the judge has in the area. As the Court is aware, border states have a lot more cases than non-border states, and we actually have less facilities than a lot of other states. But what the Court was required to do was to look at the juvenile in this case and decide whether or not she was in need of services and to provide those services in a secure or non-secure facility. Well, I guess I'm still a little swimming around on your position. Is it your position she shouldn't have had any detention, that any term would have been an abuse of discretion? Yes, Your Honor. Okay. Yes, and the reason for that is if you look at the reports and you look at the pre-sentence reports, the juvenile in this case, this young lady, had no prior criminal history whatsoever. As I pointed out, she committed something that is atrocious. Again, she didn't know what she had or how much. That doesn't excuse it. It doesn't change the guideline calculations or anything of the sort, and it doesn't change the possible harm that could have come if she hadn't been arrested. But it does go to what kind of person she is. It also goes to the fact that she has no priors and that there was nothing in the record that showed that she might recidivate or she was in need of mental health services, which is apparently the reason the judge decided to put her into this facility. There are two reasons the Court gave for it. One was she needed to be punished and she needed mental health services. Those were the two reasons. Now, there was nothing in the record to show that she needed mental health services under U.S. v. Juvenile. Well, wasn't there something in the evidence about her having twice attempted suicide? Your Honor, that is correct. And that she was profoundly depressed? There was no mention of profound depression, Your Honor. There was a mention, and it was at the interview, there was a mention that she was depressed while in custody. That's what the pre-sentence report said. That's what Ms. — excuse me, that's what the juvenile in this case said at the interview. And as the report shows, that was present. There was no finding by any psychologist or anything of the sort that she was clinically depressed or anything of the sort. The two attempted suicides the mother pointed out were because when she was 14, she was not allowed to go see movies with her friends. It was not because she had been abused. It was not because she was in a very bad way, I guess. And I'm not saying that suicide is not serious. Obviously, it is. But in taking into the context of something that happened over two years ago from the time that she committed this offense, the fact that she hadn't done it, the fact that she had no suicidal ideation while she was in custody at this time, even while in custody for over two months, points to the fact that there was not enough to find that she was in need of mental health treatment. And for that reason, the only thing that's left, if there is no mental health treatment necessary for this juvenile, is punishment. And under U.S. v. Juvenile, that's not a reason to detain someone. And for that reason, she should have been allowed to return home to continue with her studies as she said she would and as she had been doing up to the point of her arrest. There's a minute entry from February of this year where the judge is saying that he's going to contact the Bureau of Prisons to see if there's some placements available and what programs. Has anything been done? Well, Your Honor, I requested that hearing, and that was done because even though the court had said that she be moved to a Bureau of Prisons facility, she was sitting at a county jail with no services whatsoever. So the time was being wasted. Right, exactly. And it was only after that hearing that she was moved to this facility in Idaho. Before that, she was still in Arizona, but not at a facility that provided any services to her. Now, she, as I mentioned and as I believe to be the case, there was no reason for her to be given mental health treatment because she was not in need of it. As a matter of fact, she has not received it. And I'm glad that she didn't need it because she hasn't received it. If there was someone that had needed it, this would have been obviously something that would have to be taken up with the Bureau of Prisons and done the administrative way. But she was not in need of mental health treatment. That means that the only reason then for detention is punishment under U.S. juvenile. That's not allowed. At this point, I'm going to reserve the remainder of my time. Thank you. Thank you. Good morning. May it please the Court. I'm Susan Baumann, Assistant United States Attorney from the District of Arizona. The District Court did not abuse its discretion in sentencing this defendant, this juvenile, to 10 months in custody when she possessed with intent to distribute over 16 kilograms or over 36 pounds of cocaine. In dealing with factual inquiries as we are here, the District Court enjoys a wide range of discretion in fashioning sentence. The record is clear that the District Court considered all the relevant factors and weighed all the relevant factors in sentencing the juvenile to 10 months in custody. And his sentence had a rehabilitative purpose as its primary aim, as is required in juvenile in the FJDA. In ER 29-32, the District Court considered the defendant the juvenile's age, the reason for committing the offense, the seriousness of the offense, her mental health, and the fact that her brother had recently been convicted of the same offense as a juvenile and received six months in custody. What would the brother's offense have to do with her? Well, I think the Court was impacted in ER 29 and 30, and clearly the mother was impacted as well, that the juvenile had witnessed her brother go through the same exact thing. And she was not impacted by the fact that he received a sentence of six months. It clearly had no effect on her whatsoever. And I think that that was a factor that the Court did consider in determining that she needed to be sentenced to something in addition to six months so that she could realize that negative conduct has negative consequences. And I think that punishment was appropriate for the Court to consider for five reasons. One, juvenile does indicate that its primary aim is rehabilitation, but nowhere in juvenile does it state that rehabilitation is the only aim or the sole purpose of FJDA. In addition, number two, juvenile on page 787 in Note 8 indicates that the ABA standards relating to juvenile delinquents and sanctions are relevant and instructive in determining a term or recommending a term of official detention. And in Section 4.2 and 5.2 of the ABA standards, someone who is convicted of a Class I offense, as this juvenile was, the recommended sentence is 36 months. So clearly juvenile refers to a term of official detention or a recommendation of official detention, and that it is appropriate to consider. Third, clearly detention is statutorily permissible under 5037. The Court is to look at the advisory guideline range, even though the guidelines are inapplicable to juveniles. In this case, the advisory guideline range were 87 to 108 months. The statutory maximum that this juvenile could have been sentenced to was 48 months until she reached the age of 21. Probation in this case recommended a sentence of eight months. So this juvenile was sentenced to 10 months, which is far below the maximum sentence that was recommended by the ABA and much less severe than the 87 to 108 guideline range that could have been imposed to a similarly situated adult. Fourth, I'd refer the Court to U.S. v. Patrick V., which is a First Circuit case from 2004. And that case interpreted juvenile. And on pages 11 and 12, Patrick V. said that oftentimes real acceptance of responsibility can entail detention. It also says that juvenile is not authority against detention for all juveniles found to be delinquent. And fifth, I think there's a practice. Kagan. Well, let me ask you about Patrick, the case out of the First Circuit. One of the things the Court said there is that in these juvenile cases, it's important for the judge to basically assemble and see what facilities are available and what services the individual is going to get. Why wasn't it an abuse of discretion here at least not to solicit that information from the parties and the Bureau of Prisons so that that was in front of the Court at the time of sentencing? I believe that the Court did do that. On ER-32, the Court said that it looked into the facility in Safford, Arizona, and it specifically quoted, I understand they have excellent facilities there for juvenile. And furthermore — But, counsel, he didn't determine availability. Now, was that something that should have been done? No. And I think that at this point, the juvenile has a separate remedy under 28 U.S.C. 2241. There, the juvenile can challenge the execution of sentence and her confinement conditions. And that issue is not properly brought before this Court. If the juvenile is, in fact, located in Idaho, then that issue and her confinement conditions and the execution of her sentence is properly brought before the Idaho Court under 2241. I would also like to note that at the time of sentence, the juvenile did not challenge the appropriateness of the facility. Counsel asked what services that she was to receive there. And the district court specifically said on ER-34, educational services, counseling services, and mental health services. I would like to note for the Court that while counsel takes great pains to note that this juvenile didn't need or didn't get any rehabilitative treatment, I respectfully disagree. This is a 16-year-old female who transported over 36 pounds of cocaine through the International Port of Entry. She tried twice in 2004 to take her own life, once by cutting her wrists and the second time by ingesting some sort of pill. She said in PDR-30 that she sometimes feels depressed. She didn't say that now she feels depressed because she's away from her family. She said she sometimes feels depressed. This individual needed treatment, and the Court saw that, as did the probation department. The probation department on page 10 of the PDR specifically stated that the defendant needed to accept the seriousness of the offense, that based on her two previous suicide attempts, that she needed treatment. Both probation and the Court indicated that this defendant needed to realize that negative conduct results in negative consequences. Is she getting any treatment? I don't know the answer to that question. But again, I think that's the sad part of this case, counsel. I agree. But I think that, as I stated previously, her remedy is in 2241, challenging the confinement conditions that she may be under. But I think that does the U.S. Attorney's Office have any input at all on where she's assigned? No. Once the defendant is sentenced or adjudicated a juvenile delinquent, that determination is made. Is there anything that the U.S. Attorney's Office can do now? Can you make an inquiry to the Bureau of Prisons? Counsel, after the juvenile was adjudicated, called for a status conference. I don't believe it's appropriate for the U.S. Attorney's Office to take a position, simply because once she's designated, it's up to the Bureau of Prisons where she will actually be placed and housed. But again, I don't think that that issue is properly before this Court. Is there any explanation from the Bureau of Prisons that you're aware of as to why she was placed in Idaho instead of Arizona? I think that the facility in Safford either was not available at the time, and it was my understanding that the court actually placed a telephone call to Idaho to try to see whether or not she could receive the mental health services that he believed she needed in Idaho. It was also my understanding that due to weather conditions, as you know, or as you may know, the Bureau of Prisons, they take several flights at certain times, and due to weather conditions, they were unable to transport people into that part of the country. And that was the reason, I think, we discussed at the status conference after the juvenile was adjudicated. But I think the record in this case is quite clear, that the court weighed all of the relevant factors, that he used the least restrictive means. Again, there is no Bureau of Prisons facility for juveniles in Mexico. This is an individual who the court deemed needed treatment, and he could not send her to a facility in Mexico. So he did what he thought was most practical and recommended a facility in Safford, Arizona, which would be closest to the juvenile's family and closest to the juvenile's community. But I think in this case, it was clear on ER 31 when the court stated, you do deserve some punishment, but you also deserve some help, and I'm going to try to get you that. If I send you back to Mexico, I have no assurance that you're going to get the help that you need, none. At least if I keep you here a while, I have some belief that you might get something that you need. Again, on ER 32, the court stated you're being sent to a facility to get rehabilitation and treatment that you need. I hope that you take advantage of that. I think this case is clear that the court's primary aim was the rehabilitation of this juvenile. And I don't think we can examine the record with microscopic scrutiny. I think that we look at the overall record that the court created and the overall opinion of the court. And in this case, the court's one statement about punishment does not overwhelm the record that is full of references for the defendant's rehabilitative needs. The fifth reason why I think that punishment is appropriate to consider is because as a practical and common-sense approach, I do not think that punishment is antithetical to rehabilitation. I think that oftentimes punishment can be a facet of rehabilitation, it can lead to rehabilitation, and it can be used in conjunction with rehabilitation. I do not think it was appropriate for the court to consider very briefly that this defendant was in need of punishment as part of the rehabilitative needs that the court deemed that she needed. Since the focus of the government's argument is on this need, as identified by the judge, for mental health services, would the U.S. Attorney's Office have any objection in working with the defense counsel to see, at least for the remaining five months, that she receives the rehabilitation for which she was... I have no objection to doing whatever is necessary. Thank you. Thank you very much. Yes. Just a couple of brief points, Your Honor. If there was any need for mental health treatment, I can assure you I would probably be in Idaho right now and not before you. And that's the only reason that I am not as concerned as the court is as to her mental health needs, even though she has not been receiving anything. Her suicide attempts were over two years ago. They were serious in the sense that she attempted it, and that's obviously something that you don't want to happen. But as it's pointed out, she was not taken to the hospital either time because either time the injuries were relatively minor and they were taken care of through her mother. The other thing that I want to point out is, unlike Patrick V., which is the First Circuit case, in that case the district court had something besides an interview by a probation officer where the juvenile was asked about what's been happening in your life, and she says, I attempted suicide a couple of times when I was 14, and sometimes I feel depressed. In Patrick V., the court had a report that said this person needs help from a psychologist who recommended a treatment plan of 18 to 36 months. The court then sentenced that juvenile to 30 months so that that treatment of 18 to 36 months that was recommended could be done. In this case, there was nothing of that nature. I proffered to the court. Obviously, my client's statements or my client's beliefs that she was not in need of any of these services. Counsel, is it the public defender's position that punishment does not have a rehabilitative component? That is the position I've taken as to this case, Your Honor, yes. As I pointed out, there may be times when you need to hold someone longer than you might hold an adult, but you're not allowed by statute because someone might need rehabilitation for six months, even though an adult would only be in custody, say, for three months on a certain offense. But that's the way the statute is written, and all that can be done in those cases. And in this case, why do you believe that no punishment would be appropriate? Because there's no rehabilitative purpose in having her in custody. Well, because the reason that you want to rehabilitate someone is to make sure that they not commit another offense, any offense. So you look and you see what is it that this person needs to avoid them committing another offense. And you look at whether they need mental health treatment, maybe drug abuse treatment, better classes about living in society. How about just getting somebody's attention? Well, Your Honor, I believe if there was a finding that, you know, shock treatment of something or shock incarceration may be something that would have worked in this case, for example, maybe then you could make an argument that someone may be rehabilitated by the time that they're in custody. When you take someone who has not ever been in custody, the fact that they were in custody for over two months when she went before the court, that would be shock itself, those two months. Now, whether it's two months or ten months, I can't say one way or the other, but I would say that based on the facts before the court, that there was no reason to detain her any further than that date. Thank you. Mr. Werchter, I don't know how this case will come out, but if your client is not released, and I recognize that the basis for arguing that she should be released is that she doesn't really even need these mental health services, but should she be in continued detention, I just call to your attention the U.S. Attorney's offer to cooperate in any services. And, Your Honor, if the court ordered? In the event that it's appropriate, and we don't know yet because we haven't decided the case. I will follow the court's order, Your Honor. Thank you for your argument. Thank you. Counsel, both of you for your arguments this morning. United States v. Juvenile Female is submitted.
judges: B. Fletcher, McKeown, Bybee